IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| EMMITT G. ROSCOE, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:16-cv-00147 |
| | ) | |
| v. | ) | |
| | ) | |
| EARL R. BARKSDALE, *et al.*, | ) | By: Elizabeth K. Dillon |
|     Defendants. | ) | United States District Judge |

**MEMORANDUM OPINION**

Emmitt G. Roscoe, a Virginia inmate proceeding *pro se*, filed a civil rights action pursuant to 42 U.S.C. § 1983 concerning his care following the removal of his wisdom teeth. Defendants Dr. Moore and Nurse Mullins filed a motion to dismiss and the remaining defendants filed a motion for summary judgment. Roscoe has responded to both motions, and this matter is ripe for disposition.[1] Having reviewed the record, the court will grant in part and deny in part defendants Dr. Moore and Nurse Mullins's motion to dismiss, and grant defendants Barksdale, Messer, Brock, Gibson, Lawson, Addington, and Smith's motion for summary judgment.

Before turning to the defendants' motions, the court addresses a number of other motions that Roscoe has filed. First, Roscoe has filed a motion seeking preliminary injunctive relief, alleging that officers have threatened him, planted a weapon in his cell for which he received a disciplinary conviction, and placed him in administrative segregation. Roscoe asks the court to enjoin the defendants from engaging in any retaliatory acts. (Dkt. No. 37.)

Preliminary injunctive relief is an extraordinary remedy that courts should apply sparingly. *See Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991).

---

[1] To the extent Roscoe may be attempting to raise any new claims in his responses to the motion to dismiss or motion for summary judgment, the court notes that any proposed amendments must be made in accordance with Rule 15 of the Federal Rules of Civil Procedure. Because his are not, any new claims raised in Roscoe's responses are not considered by the court at this time. Roscoe may raise any such claims in a separate action after exhausting available administrative remedies.

As a preliminary injunction temporarily affords an extraordinary remedy prior to trial that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate by a "clear showing" that: (1) he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008). The party seeking relief must show that the irreparable harm he faces in the absence of relief is "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd.*, 952 F.2d at 812. Without a showing that the plaintiff will suffer imminent, irreparable harm, the court cannot grant preliminary injunctive relief. *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 360 (4th Cir. 1991). "The possibility that adequate compensatory or other corrective relief will be available at a later date . . . weighs heavily against a claim of irreparable harm." *Va. Chapter, Associated Gen. Contractors, Inc. v. Kreps*, 444 F. Supp. 1167, 1182 (W.D. Va. 1978) (quoting *Va. Petroleum Jobbers Ass'n. v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958)).

Having reviewed Roscoe's motion, the court concludes that he has not made a "clear showing" that he is likely to suffer "actual and imminent" irreparable harm in the absence of preliminary injunctive relief. Verbal threats or harassment by prison officials, even to the extent they cause an inmate fear or emotional anxiety, do not amount to a constitutional violation. *See, e.g., Morrison v. Martin*, 755 F. Supp. 683, 687 (E.D.N.C. 1990). Roscoe does not allege that he was denied a hearing or due process concerning the "planted" weapon which he was charged with possessing. And changes "in a prisoner['s] location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original

2

sentence to prison." *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991). Roscoe has failed to demonstrate that any alleged violation of his rights cannot be adequately addressed at a trial on their merits. Accordingly, the court will deny Roscoe's motion seeking preliminary injunctive relief.

Roscoe also has filed three motions to amend. Pursuant to Federal Rule of Civil Procedure 15(a), leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a). However, leave to amend a pleading should be denied "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). An amendment is considered futile if the amended complaint could not survive a motion to dismiss under Rule 12(b)(6). *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008).

In the first motion (Dkt. No. 45), Roscoe seeks to add P. Scarberry, the head of food services, and B. Taylor, a food services employee, as defendants to this action. As Roscoe alleged facts against these individuals in his original complaint and referred to them as defendants in that pleading, it appears that he mistakenly omitted their names in his initial list of defendants. Accordingly, the court will grant Roscoe's motion to amend to add these defendants and direct the clerk to notify them of the action.

In the second motion (Dkt. No. 49), Roscoe states that he wants to "fix" his complaint and add claims. In support of his motion, Roscoe alleges that, as "retaliation and harassment," he is "continuously being charged with bogus institutional infractions" since he filed this case and that two of the three charges against him have been dismissed. He also states that he wants to "bring [a] claim about [his] religious rights being violated during Ramadan."

3

To state a claim for relief under § 1983, a plaintiff must allege facts indicating that plaintiff has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42 (1988). Roscoe's allegations are far too vague and conclusory to state a cognizable constitutional claim. *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (noting that bare assertions of retaliation do not establish a claim of constitutional dimension). Further, Roscoe does not allege any facts against any of the defendants, or even against any person. Still further, even if the proposed amendments were not futile, it appears that the allegations may arise out of an occurrence or series of occurrences separate from the allegations in this case and would be more appropriately made, if properly alleged, in a separate case. *See* Fed. R. Civ. P. 18 and 20. Based on the foregoing, the court finds that Roscoe's amendments would be futile; thus, the court will deny his second motion to amend. The court notes that denial of Roscoe's motion to amend does not preclude him from raising these claims in greater detail in a separate civil action after he has exhausted available administrative remedies.

Roscoe's third motion to amend (Dkt. No. 50) is contained within the same document as his second motion to amend (Dkt. No. 49), but has been docketed separately. In it, Roscoe indicates that he wishes to amend his responses in opposition to defendants' motions to dismiss and for summary judgment; however, he provides no information on how he would like to amend those responses. Accordingly, the court denies Roscoe's third motion to amend.

I. BACKGROUND

On April 8, 2015, Roscoe was taken from Red Onion State Prison (Red Onion) to a private dentist's office to have his wisdom teeth removed. Roscoe alleges that, when he arrived back at Red Onion after the procedure, defendant Dr. Moore, a dentist at Red Onion, did not evaluate him and did not prescribe any pain medication or a soft diet. Roscoe contends that he

4

"was unable to eat anything" and "endure[d] pain for a month [or] more." (Compl. ¶ 24, Dkt. No. 1.)

Despite not having an order for a soft diet, at dinner time on April 8, 2015, Roscoe was given a soft diet tray because a food service worker thought he "look[ed] like [he couldn't] chew." On April 9, 2015, defendant Officer Smith gave Roscoe a regular food tray. When Roscoe "repeatedly" told Smith that he was supposed to have a soft food tray, Smith said he would check on it, but he never brought one back. Roscoe alleges that Smith also did not feed him dinner that day. (*Id.* ¶ 25 and p. 8.)[2]

On April 10, 2015, defendant Officer Gibson brought Roscoe a Common Fare food tray. When Roscoe complained that he should have a soft diet tray, Gibson took the tray back to the kitchen and was told by defendant Taylor, a food services worker, that Roscoe "was not down for a soft diet tray" and that Gibson should take Roscoe a regular tray which had fried potato pancakes and "turkey ham." Roscoe asked Gibson for an emergency grievance form, and Gibson gave it to him. Roscoe completed the emergency grievance and tried to give it to defendant Officer Brock, who told Roscoe, "Fuck you and that emergency grievance. I don't sign them shits for people who are snitching." Roscoe then tried to give the emergency grievance to defendant Officer Lawson, who said, "You know what paperwork can do for you." Roscoe responded that he hoped it would get him medical attention, and Lawson states "Yeah, not the kind you [are] seeking. I'm not signing it." (*Id.* at 8.)

Shortly thereafter on the same morning, Unit Manager (UM) Swiney came to Roscoe's pod. When he saw how swollen Roscoe's mouth was, UM Swiney called Dr. Moore and asked him to assess Roscoe and to "prescribe him proper care to aid his healing." Roscoe alleges that

---

[2] Most of the complaint's paragraphs are numbered, but those appearing on pages 8 and 9 are not.

5

Dr. Moore "assured" UM Swiney that he would assess Roscoe and prescribe him a soft diet tray and some additional pain medication. (*Id.* at 8–9)

Later that day, Gibson and defendant Officer Addington gave Roscoe a regular lunch tray that had a tag on in indicating that it was for Roscoe and that it was a soft diet tray. Roscoe complains, however, that "everything that on the tray was not soft enough to where [he] could eat it without chewing."[3] When Roscoe told Addington that he was on a soft diet, Addington told him that he was "not going back to the kitchen [and Roscoe should just] smush it with [his] spoon." For dinner that night, Roscoe went to the "chow hall" to eat and was given a regular tray. (*Id.* at 9.)

On April 11, 2015, Roscoe was given a vegetarian food tray at lunch time and was told that, "beans, rice, and cabbage [do] not have to be chewed." Roscoe spoke with food services worker Taylor about the tray, and Taylor told Roscoe that defendant Scarberry, the head of food services, told Taylor "and other staff" to give Roscoe a vegetarian tray for a soft diet. He alleges that he filed three informal complaints on April 12, 2015, concerning his diet and failure to receive medication.[4] (*Id.*)

On April 13, 2015, during morning pill pass, defendant Nurse Mullins gave Roscoe improper "dosages" of his "prescribed medication," which included Boost drinks and medicated mouthwash. During afternoon pill pass the same day, Nurse Mullins "shorted" Roscoe on his "med[ication]s" again and told him, "I didn't give you your meds this morning because you said I [have] been shorting your meds." (*Id.*)

---

[3] The food tray included "beans, rice, and baked dinner."

[4] Only two of the three informal complaints appear in the record before the court, and both appear to have been signed by Roscoe on April 12, 2015. Only one of them is marked as received or responded to, and that one indicates that it was received on April 27, 2015.

6

II.  DISCUSSION

**A.  Motion to Dismiss Standard**

Dr. Moore and Nurse Mullins filed a motion to dismiss Roscoe's complaint.  A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).  In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level," *id*., with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, *Chao v. Rivendell Woods, Inc*., 415 F.3d 342, 346 (4th Cir. 2005).  Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).  A claim is plausible if the complaint contains "factual content that allows the

7

court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

In order to allow for the development of a potentially meritorious claim, federal courts have an obligation to construe pro se pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (citation omitted). Moreover, "[l]iberal construction of the pleadings is particularly appropriate where . . . there is a pro se complaint raising civil rights issues." *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009) (quoting *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978)). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999) (quoting *Sado v. Leland Mem'l Hosp.*, 933 F. Supp. 490, 493 (D. Md. 1996)).

1. **Denial of medical care**

In their motion to dismiss, Dr. Moore and Nurse Mullins argue that Roscoe has not demonstrated that either of them acted with deliberate indifference or that Roscoe's "dental needs and related treatment," were a sufficiently serious medical need.

To state a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must allege facts sufficient to demonstrate that jail officials were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Staples v. Va. Dep't of Corr.*, 904 F. Supp. 487, 492 (E.D. Va. 1995). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). A prison official is "deliberately indifferent" only if he "knows of and

8

disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

### a. Dr. Moore

Roscoe alleges that on April 8, 2015, Dr. Moore did not evaluate him when he returned to Red Onion after having his wisdom teeth removed and did not prescribe Roscoe a soft diet or "any pain medication," which left him "unable to eat anything" and caused him to "endure a month and more of pain day and night." (Compl. ¶ 25.) Roscoe contends that Dr. Moore has assessed and prescribed pain medication and a soft diet to other inmates who have had their wisdom teeth removed. He also alleges that Dr. Moore "was aware" that Roscoe had been on a waiting list to have his wisdom teeth removed for over a year and that Roscoe's "condition" was "in need of" medical attention after the operation. (*Id.* ¶ 17.) Roscoe further states that on April 10, 2015, after seeing how swollen Roscoe's mouth was, UM Swiney called Dr. Moore and asked Dr. Moore if he had seen Roscoe; Dr. Moore said no; UM Swiney requested that Dr. Moore assess Roscoe and prescribe "proper care to aid his healing"; and Dr. Moore assured UM Swiney that he would assess Roscoe and prescribe him a soft diet tray and some additional pain medication. (*Id.* at 8–9.) Accepting all factual allegations in the complaint as true and drawing all reasonable inferences in favor of Roscoe, the court finds that Roscoe's allegations are sufficient to state a plausible claim that Dr. Moore was deliberately indifferent to a serious medical need. Therefore, the court will deny the motion to dismiss as to this claim.

### b. Nurse Mullins

Roscoe alleges that on April 13, 2015, during morning pill pass, he asked Nurse Mullins why she was not giving him "proper dosages of his prescribed medication," specifically Boost drink supplements and medicated mouthwash. Later that day, during afternoon pill pass, Nurse

9

Mullins "again shorted" Roscoe and told him that she "didn't give [him his] meds [that] morning because [he] said [she had] been shorting" him. Accepting all factual allegations in the complaint as true and drawing all reasonable inferences in favor of Roscoe, the court finds that Roscoe's allegation that Nurse Mullins knowingly failed to provide him with medication prescribed by the doctor is sufficient to state a plausible claim that Nurse Mullins was deliberately indifferent to a serious medical need. Therefore, the court will deny the motion to dismiss as to this claim.

### 2. Qualified immunity

Dr. Moore and Nurse Mullins assert that they are entitled to qualified immunity. "The burden of proof and persuasion with respect to a defense of qualified immunity rests on the official asserting that defense." *Meyers v. Baltimore Cty., Md.*, 713 F.3d 723, 731 (4th Cir. 2013). Dr. Moore and Nurse Mullins have not met their burden.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When a defendant asserts the affirmative defense of qualified immunity, the court must determine "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right[,]" and "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). In determining whether the law was clearly established, the court "'ordinarily need not look beyond the decisions of the Supreme Court, [the Fourth Circuit Court of Appeals], and the highest court of the state in which the case arose.'"

*Lefemine v. Wideman*, 672 F.3d 292, 298 (4th Cir. 2012) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (1999)), *vacated on other grounds*, 133 S. Ct. 9 (2012).

In support of their qualified immunity argument, Dr. Moore and Nurse Mullins state that Roscoe's "allegations do not demonstrate any violation of any clearly established law by Dr. Moore or Nurse Mullins . . . let alone any violation of any clearly established law of which a reasonable officer should have been aware." The court has already determined that the facts, as the court must view them for purposes of a motion to dismiss, are sufficient to state plausible claims that Dr. Moore's and Nurse Mullin's conduct amounted to a constitutional violation. Moreover, a reasonable officer would have known at that time that failing to provide an inmate adequate medical treatment, assessment, or medication for a serious medical need would be unlawful. *See, e.g.*, *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990). Accordingly, the court will deny Dr. Moore and Nurse Mullin's motion to dismiss on the basis of qualified immunity.

### 3. Official capacity claims—damages

To the extent Roscoe brings this action against the Dr. Moore and Nurse Mullins in their official capacities for monetary damages, such relief is not available in § 1983 cases. *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989). Therefore, the court will grant defendants' motion to dismiss Roscoe's claims for monetary damages against defendants in their official capacities.

### B. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the

11

entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted). In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See id.* at 255; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

A court must grant a motion for summary judgment if, after adequate time for discovery, the nonmoving party fails to make a showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party cannot defeat a properly supported motion for summary judgment with mere conjecture and speculation. *Glover v. Oppleman*, 178 F. Supp. 2d 622, 631 (W.D. Va. 2001) ("Mere speculation by the non-movant cannot create a genuine issue of material fact."). The trial judge has an "affirmative obligation" to "prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 324–25).

**C. Exhaustion**

Defendants Barksdale, Messer, Brock, Gibson, Lawson, Addington, and Smith argue that Roscoe failed to properly exhaust available administrative remedies as to any of the claims

against them. Having reviewed the record, the court agrees and, therefore, will grant the motion for summary judgment.

VDOC Operating Procedure (OP) § 866.1, Offender Grievance Procedure, is the mechanism used to resolve inmate complaints and requires that, before submitting a formal grievance, the inmate must demonstrate that he has made a good faith effort to resolve the grievance informally through the procedures available at the institution to secure institutional services or resolve complaints.

If the informal resolution effort fails, the inmate must initiate a regular grievance by filling out the standard "Regular Grievance" form. Prior to review of the substance of a grievance, prison officials conduct an "intake" review of the grievance to assure that it meets the published criteria for acceptance. A grievance meeting the criteria for acceptance is logged in on the day it is received. If the grievance does not meet the criteria for acceptance, prison officials complete the "Intake" section of the grievance and return the grievance to the inmate. If the inmate desires a review of the intake decision, he must send the grievance form to the Regional Ombudsman.

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). A prisoner must exhaust all available administrative remedies, whether or not they meet federal standards or are plain, speedy or effective, *Porter*, 534 U.S. at 524, and even if exhaustion would be futile

13

because those remedies would not provide the relief the inmate seeks. *Davis v. Stanford*, 382 F. Supp. 2d 814, 818 (E.D. Va. 2005). Failure to exhaust all levels of administrative review is not proper exhaustion and will bar an inmate's § 1983 action. *Woodford v. Ngo*, 548 U.S. 81, 88–89 (2006).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725, 729 (4th Cir. 2008); *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he second PLRA amendment made clear that exhaustion is now mandatory."). But the court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d at 725.

### 1. Denial of pain medication and a soft diet tray

Defendants argue that Roscoe did not properly exhaust available administrative remedies concerning his claims that he was denied pain medication and a soft diet tray. According to Roscoe, he filed three informal complaints on April 12, 2015, one to the medical department, one to food services, and one to security, alleging that he had not been prescribed and/or was not receiving pain medication or a soft diet. On May 10, 2015, Roscoe timely filed a regular grievance alleging that he had not been prescribed and/or was not receiving pain medication or a soft diet, that the nurse was not properly giving him his medications, and that he had not received

14

the soft diet per Dr. Moore's order.[5] The grievance was rejected because it contained more than one issue, in violation of OP § 866.1(VI)(2)(a) and the instructions for filing listed at the top of the grievance form. Roscoe filed a second regular grievance on May 17, 2015, alleging that he was not prescribed pain medication or a soft diet. The grievance was rejected as untimely filed. Roscoe appealed the rejections of both of his grievances, to no avail.

It is clear that administrative remedies were available to Roscoe concerning these claims. He filed informal complaints concerning his allegations. He also had timely access to a regular grievance to further exhaust his administrative remedies.[6] Roscoe's choice to include multiple issues on the same form, in violation of OP, and his choice to file it at the very end of the thirty-day time limit for filing grievances do not make the administrative remedies unavailable to him. Further, as his grievances were rejected at intake, it is clear that he did not follow the required procedural steps to properly exhaust administrative remedies. Accordingly, the court concludes that Roscoe's claims concerning denial of pain medication and a soft diet are unexhausted, and the court will grant the motion for summary judgment as to these claims.

### 2. All other claims against defendants Barksdale, Messer, Brock, Gibson, Lawson, Addington, and Smith

It is undisputed that Roscoe did not file a regular grievance concerning any of his other allegations against defendants Barksdale, Messer, Brock, Gibson, Lawson, Addington, and Smith. And Roscoe has not demonstrated that the grievance process was otherwise unavailable

---

[5] The court notes the apparent inconsistency between the allegations that he was not prescribed a soft diet and did not receive the soft diet that the doctor prescribed; however, the court need not resolve the factual discrepancy.

[6] In his motion seeking preliminary injunctive relief, Roscoe alleges that in attempting to "grievance this situation" (it is unclear whether he is referring to emergency grievances or regular grievances), he was threatened by officers, had a weapon planted in his cell, and "subjected" to segregation. However, he also states that he "never stop[p]ed pushing." And, in fact, he did file a regular grievance concerning these claims. To the extent he is complaining that he was denied emergency grievances, the court notes that filing an emergency grievance is not a required step in the process of exhausting administrative remedies under OP § 866.1.

15

to him. Although he complains the defendant Messer, the Grievance Coordinator, makes it difficult for inmates to file grievances because the grievances "somehow never satisf[y] the grievance procedure," he has not demonstrated that the grievance process was actually unavailable to him.[7] He was able to file informal complaints, grievances, and appeals as to other claims, and he has not demonstrated why he did not even attempt to exhaust these claims. Accordingly, the court concludes that all of Roscoe's other claims against defendants Barksdale, Messer, Brock, Gibson, Lawson, Addington, and Smith are unexhausted; therefore, the court will grant defendants' motion for summary judgment as to these claims.

### III. CONCLUSION

For the reasons stated herein, defendants Dr. Moore and Nurse Mullins's motion to dismiss is granted in part and denied in part and defendants Barksdale, Messer, Brock, Gibson, Lawson, Addington, and Smith's motion for summary judgment is granted.[8]

An appropriate order will be entered.

Entered: March 31, 2017.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge

---

[7] The court also notes that an inmate has no constitutional or other federal legal right to participate in grievance proceedings. *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994).

[8] Roscoe also filed a "motion to receive declarations" (Dkt. No. 42) wherein he seeks the court's assistance in obtaining declarations from various inmates who will either corroborate Roscoe's allegations or provide their personal accounts of similar incidents that happened to them. Rule 26(b)(1) states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." The court finds that the proposed declarations are not proportional to the needs of the case because they would not help resolve the current motions to dismiss and for summary judgment. Accordingly, the court will deny his motion without prejudice. However, if after the remaining defendants have filed motions for summary judgment, Roscoe believes that this discovery is relevant and proportional to the needs of the case, he may renew his motion.