IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| EMMITT G. ROSCOE, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:16-cv-00147 |
| | ) | |
| v. | ) | |
| | ) | |
| EARL R. BARKSDALE, *et al.*, | ) | By: Elizabeth K. Dillon |
|     Defendants. | ) | United States District Judge |

**MEMORANDUM OPINION**

Emmitt G. Roscoe, a Virginia inmate proceeding *pro se*, filed a civil rights action pursuant to 42 U.S.C. § 1983 concerning his care following the removal of his wisdom teeth. By memorandum opinion and order entered March 31, 2017, the court granted summary judgment in favor of several defendants.[1] (Dkt. Nos. 53 and 54.) This matter is before the court on the motions for summary judgment of defendants Dr. Moore, Nurse Mullins, B. Taylor, and P. Scarberry. Roscoe has responded to the motions and filed a cross- motion for summary judgment. Having reviewed the record, the court will grant defendants' motions for summary judgment and deny Roscoe's motion.

I. BACKGROUND

On April 8, 2015, Roscoe was taken from Red Onion State Prison (Red Onion) to a private dentist's office to have his wisdom teeth removed. Roscoe alleges that, when he arrived back at Red Onion after the procedure, defendant Dr. Moore, a dentist at Red Onion, did not evaluate him and did not prescribe any pain medication or a soft diet. Roscoe contends that he "was unable to eat anything" and "endure[d] pain for a month [or] more." (Compl. ¶ 24, Dkt. No. 1.)

---

[1] The court also denied in part the motion to dismiss of defendants Dr. Moore and Nurse Mullins and granted Roscoe's motion to amend his complaint to add defendants B. Taylor and P. Scarberry. (Dkt. Nos. 53 and 54.)

Despite not having an order for a soft diet, at dinner time on April 8, 2015, Roscoe was given a soft diet tray because a food service worker thought he "look[ed] like [he could not] chew." On April 9, 2015, an officer gave Roscoe a regular food tray. When Roscoe "repeatedly" told the officer that he was supposed to have a soft food tray, the officer said he would check on it, but he never brought one back. Roscoe alleges that the he also did not receive dinner that day. (*Id.* ¶ 25 and p. 8.)[2]

On April 10, 2015, another officer brought Roscoe a Common Fare food tray. When Roscoe complained that he should have a soft diet tray, the officer took the tray back to the kitchen and was told by defendant B. Taylor, a food services worker, that Roscoe "was not down for a soft diet tray" and that the officer should take Roscoe a regular tray which had fried potato pancakes and "turkey ham." Roscoe asked the officer for an emergency grievance form, and the officer gave it to him. Roscoe completed the emergency grievance and tried to give it to another officer, who told Roscoe, using foul and belligerent language, that he would not sign it "for people who are snitching." Roscoe then tried to give the emergency grievance to another officer, who said, "You know what paperwork can do for you." Roscoe responded that he hoped it would get him medical attention, and the officer stated "Yeah, not the kind you [are] seeking. I'm not signing it." (*Id.* at 8.)

Shortly thereafter on the same morning, a unit manager came to Roscoe's pod. When he saw how swollen Roscoe's mouth was, the unit manager called Dr. Moore and asked him to assess Roscoe and to "prescribe him proper care to aid his healing." Roscoe alleges that Dr. Moore "assured" the unit manager that he would assess Roscoe and prescribe him a soft diet tray and some additional pain medication. (*Id.* at 8-9.)

---

[2] Most of the complaint's paragraphs are numbered, but those appearing on pages 8 and 9 are not.

Later that day, two officers gave Roscoe a regular lunch tray that had a tag on in indicating that it was for Roscoe and that it was a soft diet tray. Roscoe complains, however, that "everything that on the tray was not soft enough to where [he] could eat it without chewing."[3] When Roscoe told one of the officers that he was on a soft diet, the officer told him that he was "not going back to the kitchen [and Roscoe should just] smush it with [his] spoon." For dinner that night, Roscoe went to the "chow hall" to eat and was given a regular tray. (*Id.* at 9.)

On April 11, 2015, Roscoe was given a vegetarian food tray at lunch time and was told that, "beans, rice, and cabbage [do] not have to be chewed." Roscoe spoke with food services worker Taylor about the tray, and Taylor told Roscoe that defendant P. Scarberry, the head of food services, told Taylor "and other staff" to give Roscoe a vegetarian tray for a soft diet. Roscoe alleges that he filed three informal complaints on April 12, 2015, concerning his diet and failure to receive medication.[4] (*Id.*)

On April 13, 2015, during morning pill pass, defendant Nurse Mullins gave Roscoe improper "dosages" of his "prescribed medication," which included Boost drinks and medicated mouthwash. During afternoon pill pass the same day, Nurse Mullins "shorted" Roscoe on his "med[ication]s" again and told him, "I didn't give you your med[ication]s this morning because you said I [have] been shorting your med[ication]s." Roscoe alleges that he filed three more informal complaints on April 16, 2015.[5] (*Id.*)

---

[3] The food tray included "beans, rice, and baked dinner."

[4] Only two of the three informal complaints appear in the record before the court and both appear to have been signed by Roscoe on April 12, 2015. *See* Dkt. No. 2, 4; Dkt No. 41-1, 27. Only one of the informal complaints is marked as received or responded to, and that one indicates that it was received on April 27, 2015.

[5] None of these alleged informal complaints appear in the record.

On May 7, 2015, Dr. Moore responded to one of Roscoe's informal complaints dated April 12, 2015, stating that, despite his complaints about his diet and medications, Roscoe had a prescription for ibuprofen twice a day from the day of the procedure through April 19, 2015; that he had a prescription for Tylenol during that same time; that he had a 10-day prescription for Amoxicillin beginning on the day of the procedure; that he had an eight-day order for Boost drinks beginning the day after the procedure; that he had a seven-day soft-diet order beginning two days after the procedure; and that he had a two-week order for a medicated oral rinse beginning five days after the procedure.

On May 10, 2015, Roscoe filed a regular grievance, complaining that he had not been prescribed and/or was not receiving pain medication or a soft diet, that the nurse was not properly giving him his medications, and that he had not received the soft diet per Dr. Moore's order.[6] The grievance was rejected at intake on May 12, 2015, because it contained more than one issue, in violation of Virginia Department of Corrections' Operating Procedure (OP) § 866.1, *Offender Grievance Procedure*. Roscoe was advised that he could resubmit the grievance with only one issue. Roscoe appealed the intake decision, and it was upheld on May 26, 2015.

While his appeal of the first regular grievance was pending, Roscoe also filed a second regular grievance on May 17, 2015, complaining that following the procedure on April 8, 2015, he had not been prescribed any medication or a soft diet. That grievance was rejected at intake because it was filed outside the filing period set out in OP § 866.1. Roscoe appealed the intake decision, and it was upheld on May 26, 2015. Roscoe did not file any other grievances concerning the claims raised in this action.

---

[6] The court notes the apparent inconsistency between the allegations that he was not prescribed a soft diet and did not receive the soft diet that the doctor prescribed; however, the court need not resolve the factual discrepancy.

4

II. DISCUSSION

A. **Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted). In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See id.* at 255; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

B. **Exhaustion**

Defendants argue that Roscoe failed to properly exhaust available administrative remedies as to any of the claims against them. Having reviewed the record, the court agrees and, therefore, will grant the motions for summary judgment.

OP § 866.1 is the mechanism used to resolve inmate complaints and requires that, before submitting a formal grievance, an inmate must demonstrate that he has made a good faith effort

5

to resolve a grievance informally through the procedures available at the institution to secure institutional services or resolve complaints. If fifteen days have passed from the date the informal complaint was logged without the inmate receiving a response, he may submit a regular grievance on the issue.

If the informal resolution effort fails, the inmate must initiate a regular grievance by filling out the standard "Regular Grievance" form. Prior to review of the substance of a regular grievance, prison officials conduct an "intake" review of the grievance to assure that it meets the published criteria for acceptance. Among other requirements, a regular grievance may only contain one issue and generally must be submitted within thirty days from the date of the occurrence or incident. A grievance meeting the criteria for acceptance is logged in on the day it is received. If the grievance does not meet the criteria for acceptance, prison officials complete the "intake" section of the grievance and return the grievance to the inmate. If the inmate desires a review of the intake decision, he must send the grievance form to the Regional Ombudsman.

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). A prisoner must exhaust all available administrative remedies, whether or not they meet federal standards or are plain, speedy, or effective, *Porter*, 534 U.S. at 524, and even if exhaustion would be futile because those remedies would not provide the relief the inmate seeks. *Davis v. Stanford*, 382 F. Supp. 2d 814, 818 (E.D. Va. 2005). Failure to exhaust all levels of administrative review is not

6

proper exhaustion and will bar an inmate's § 1983 action. *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006). Further, to comply with § 1997e(a), an inmate must follow each step of the established grievance procedure that the facility provides to prisoners and meet all deadlines within that procedure before filing his § 1983 action. *See id.* at 90-94 (finding inmate's untimely grievance was not "proper exhaustion" of available administrative remedies under § 1997e(a)).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725, 729 (4th Cir. 2008); *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he second PLRA amendment made clear that exhaustion is now mandatory."). But the court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d at 725.

Defendants argue that Roscoe did not properly exhaust available administrative remedies concerning his claims that he was denied medication and a soft diet. According to Roscoe, he filed three informal complaints on April 12, 2015, one to the medical department, one to food services, and one to security, alleging that he had not been prescribed and/or was not receiving pain medication or a soft diet. He also alleges that he filed three more informal complaints on April 16, 2015. On May 10, 2015, Roscoe timely filed a regular grievance alleging that he had not been prescribed and/or was not receiving pain medication or a soft diet, that the nurse was not properly giving him his medications, and that he had not received the soft diet per Dr. Moore's order. The grievance was rejected because it contained more than one issue, in

7

violation of OP § 866.1(VI)(2)(a) and the instructions for filing listed at the top of the grievance form. Roscoe filed a second regular grievance on May 17, 2015, alleging that he was not prescribed medication or a soft diet after his surgery on April 8, 2015. The grievance was rejected as untimely filed. Roscoe appealed the rejections of both of his grievances, to no avail.

It is clear that administrative remedies were available to Roscoe concerning these claims. He filed informal complaints concerning his allegations. He also had timely access to a regular grievance to further exhaust his administrative remedies. Roscoe's choices to include multiple issues on the same regular grievance and to file his grievances at the end of the thirty-day time limit for filing grievances do not make administrative remedies unavailable to him. Further, as his grievances were rejected at intake, it is clear that he did not follow the required procedural steps to properly exhaust administrative remedies. Accordingly, the court concludes that Roscoe's claims concerning denial of medication and a soft diet are unexhausted, and the court will grant defendants' motions for summary judgment and deny Roscoe's motion.

**C. Motion for Preliminary Injunctive Relief**

Roscoe also filed a motion seeking preliminary injunctive relief, alleging that beginning in May 2017, approximately two years after the events giving rise to this action, while housed at Red Onion, he was assigned to segregation on false charges, placed in a cell that had "old feces in the toilet bowl," denied showers, received food that had been "tampered with," denied access to law library f[or]ms in an[] effort to delay and h[i]nder [his] access to the courts," screamed at, and threatened with placement in a strip cell because he refused to eat. He also alleges that on June 21, 2017, non-medical, non-defendant staff at Red Onion refused him an offsite medical visit for his painful jawbone which he had broken four months prior and falsely accused him of refusing the appointment after they subjected him to "unneeded use of profane language" and

threatened to use mace or an electric shield on him. On November 1, 2017, Roscoe was transferred to Sussex I State Prison for medical care, and then he was transferred back to Red Onion on November 21, 2017, and placed in a segregation unit. Roscoe argues that officers "connected to the defendant[s]" are retaliating against him for filing law suits. (Dkt. Nos. 77, 79, 82, 87, and 89.)

Preliminary injunctive relief is an extraordinary remedy that courts should apply sparingly. *See Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991). As a preliminary injunction temporarily affords an extraordinary remedy prior to trial that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate by a "clear showing" that: (1) he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008). The party seeking relief must show that the irreparable harm he faces in the absence of relief is "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd.*, 952 F.2d at 812. Without a showing that the plaintiff will suffer imminent, irreparable harm, the court cannot grant preliminary injunctive relief. *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 360 (4th Cir. 1991). "The possibility that adequate compensatory or other corrective relief will be available at a later date . . . weighs heavily against a claim of irreparable harm." *Va. Chapter, Associated Gen. Contractors, Inc. v. Kreps*, 444 F. Supp. 1167, 1182 (W.D. Va. 1978) (quoting *Va. Petroleum Jobbers Ass'n. v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958)). An interlocutory injunction is not appropriate when the harm complained of does not arise from the harm alleged in the complaint. *Omega World Travel v. TWA*, 111 F.3d 14, 16 (4th Cir. 1997). The movant must establish a relationship between the injury claimed in the

motion and the conduct giving rise to the complaint.  *Id.*, *see In re Microsoft Antitrust Litig.*, 333 F.3d 517, 526 (4th Cir. 2003).  "[A] preliminary injunction may never issue to prevent an injury or harm which not even the moving party contends was caused by the wrong claimed in the underlying action."  *Omega World Travel*, 111 F.3d at 16; *see Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994).

Having reviewed Roscoe's motion and subsequent related filings, the court finds no basis to grant the relief requested.  First, the allegations in Roscoe's motion are not related to the claims raised in the underlying complaint.  Roscoe has not demonstrated any connection between the defendants (a dentist, a nurse, and two food service workers) and the alleged retaliation, other than that the defendants work at the same prison as the officers and staff who are allegedly retaliating.  In fact, Roscoe states that Dr. Moore provided him with medical treatment during the time of the alleged retaliation.  Moreover, Roscoe has not made a "clear showing" that he is likely to suffer "actual and imminent" irreparable harm in the absence of preliminary injunctive relief or that his claims are likely to succeed at a trial on their merits.  For these reasons, the court will deny Roscoe's motion for preliminary injunctive relief.  The court notes, however, that Roscoe may refile his claims related to the motion in a separate civil action, against the appropriate defendants.

### III. CONCLUSION

For the reasons stated herein, defendants' motions for summary judgment are granted, Roscoe's motion for summary judgment is denied, and Roscoe's motion seeking preliminary injunctive relief is denied.[7]

---

[7] Roscoe also filed a "motion to receive declarations" (Dkt. No. 69) wherein he seeks the court's assistance in obtaining declarations from various inmates and two Red Onion employees who will either corroborate Roscoe's allegations about being denied mediation and/or a soft diet or will provide their personal accounts of similar incidents that happened to them.  Rule 26(b)(1) states that "[p]arties may obtain discovery regarding any

An appropriate order will be entered.

Entered: March 5, 2018.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge

---

nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." The court finds that the proposed declarations are not proportional to the needs of the case because they would not help resolve the current motions for summary judgment. Accordingly, the court will deny his motion.